OPINION OF THE COURT
Arlene P. Bluth, J.
Respondents’ cross motion to dismiss the petition is denied and respondents are directed to answer pursuant to the CPLR.
Background
This proceeding arises out of petitioner’s former employment as a Child Protective Specialist for respondent New York City Administration for Children’s Services (ACS). Petitioner began working for ACS in August 2016 as a probationary employee. On September 2, 2016, petitioner was arrested for, inter alia, criminal mischief in Queens in connection with a domestic dispute with her ex-boyfriend. Petitioner claims that she told her supervisor verbally about the incident on September 6, 2016. After being told that she was required to inform ACS about the incident in writing, petitioner emailed the ACS Agency Commissioner on September 7, 2016 about the arrest.
Because of the arrest, petitioner was fired on September 22, 2016. Less than a month later, on October 20, 2016, all charges against petitioner in connection with the September 2 incident were dismissed. Petitioner requested, on November 2, 2016, that she be reinstated to her position but respondents failed to respond to this request. Petitioner commenced the instant proceeding to be reinstated to her position.
*539 In support of the cross motion to dismiss, respondents insist that there was a rational basis to fire petitioner because she was a probationary employee—petitioner could have been terminated for any reason as long as it was not in bad faith. Respondent observes that Ms. Joan Cleary (ACS Borough Commissioner) recommended that petitioner be terminated because she failed to adhere to an acceptable standard of conduct even though, on the record developed in this early stage of the proceeding, there is no indication that Ms. Cleary ever spoke to petitioner, saw an arrest report or had any knowledge other than the self-reported arrest. Respondents maintain that firing a probationary employee after an arrest is not indicative of bad faith even if the employee is later acquitted or all charges are dismissed.
Petitioner insists that respondents’ basis for petitioner’s termination are the criminal charges that were later dismissed. Petitioner contends that false assumptions cannot support a finding that respondents’ determination was rational.
Discussion
“On a CPLR 3211 motion to dismiss, the court will accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory” (Nonnon v City of New York, 9 NY3d 825, 827 [2007] [internal quotation marks and citation omitted]).
In a CPLR article 78 proceeding, “the issue is whether the action taken had a rational basis and was not arbitrary and capricious” (Matter of Ward v City of Long Beach, 20 NY3d 1042, 1043 [2013] [internal quotation marks and citation omitted]). “An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts” (id.). “If the determination has a rational basis, it will be sustained, even if a different result would not be unreasonable” (id.). “Arbitrary action is without sound basis in reason and is generally taken without regard to the facts” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]).
“A probationary employee may be discharged without a hearing or a statement of reasons, in the absence of a demonstration that her termination was made in bad faith, for a constitutionally impermissible purpose, or in violation of statutory or decisional law” (Matter of Turner v Horn, 69 AD3d 522, 522 [1st Dept 2010]).
*540 As respondents point out, there is case law that may be read for the proposition that a probationary employee can be fired after an arrest even if the charges are later dropped; however, those cases cited by respondents are distinguishable. For example, respondents rely on Matter of Rivera v New York City Dept. of Sanitation (142 AD3d 463, 464-465 [1st Dept 2016]). That case involved a probationary sanitation truck driver who was arrested for DWI and “ [h] is commercial driver’s license, a requirement for a sanitation worker, was suspended and then revoked as a result [of the arrest]. Several disciplinary complaints were filed as a result of this incident and he was subsequently terminated” (id. at 464). The instant petitioner, unlike the driver in Rivera who was unable to do his job without a driver’s license, had no disciplinary complaints filed against her due to the incident, sought reinstatement after the charges were dropped and was able to do her job while the criminal case proceeded.
Respondents also rely upon Matter of Holder v Sielaff (184 AD2d 228 [1st Dept 1992]) in which the First Department held that petitioner’s termination as a probationary employee was not done in bad faith even though he was fired after being arrested for possession of a controlled substance and a dangerous weapon, charges that were later dropped after petitioner completed a 12 week diversion program. That is not the same thing as what happened here—respondents firing petitioner simply for being arrested and refusing to reconsider rehiring her when the charges were dropped, without any conditions, shortly thereafter.
Another First Department case cited by respondents is Oberson v City of New York (232 AD2d 172 [1st Dept 1996]). There, a probationary employee, who had poor performance reviews, stabbed his supervisor. Even though the criminal charges were later dropped, of course the firing was proper for this on-the-job stabbing.
Even though these cases are distinguishable, a fair reading of First Department precedent does indicate that a probationary employee can be fired for an arrest even if the charges are later dropped. Therefore, this court is constrained to find that petitioner’s termination on September 22, 2016, based only on the arrest, was neither arbitrary nor capricious. However, petitioner also alleges that she (through her attorney) asked for her position back after her charges were dropped (verified petition ¶¶ 15-16) about a month after her termination. *541 Petitioner alleges that respondents failed to respond to her request for reinstatement.
Thus the question for this court is whether petitioner may state a cause of action based upon respondents’ alleged refusal to respond to petitioner’s reinstatement request. Respondents are alleged to have made their determination to fire petitioner based solely on the fact that she was arrested. Once learning that those charges were dropped, respondents did nothing—respondents did not reinstate petitioner or justify the decision not to give petitioner her job back, a job for which she was recently found qualified enough to hire.
An arrest is, of course, based upon allegations that a person committed certain acts that constitute a violation of some criminal law. An arrest is not, however, a finding that actual wrongdoing occurred. In this country, a person who is arrested is innocent until proved guilty. Respondents’ reliance on an arrest, when the crime was never established, to justify denying petitioner’s reinstatement is problematic. Petitioner was punished (fired and denied reinstatement) based on acts that no one has ever proved she committed. In fact, those charges were dismissed.[1] As alleged, it was arbitrary and capricious for respondents to simply ignore petitioner’s claim for reinstatement.
Respondents’ expansive interpretation of its termination power relating to probationary employees will lead to absurd results regarding reinstatement. For instance, under respondents’ view, ACS could refuse to reinstate a probationary employee who was falsely accused of a crime when the arrest was the only basis for the firing. In essence, respondents want the ability to ignore future developments when the reason for terminating a probationary employee turns out to be demon *542 strably untrue.[2] Petitioner has stated a cause of action based upon respondents’ refusal to respond to her reinstatement request.
Respondents’ Alleged Failure to Follow Own Rules
Petitioner also alleges that ACS did not follow its own procedure to fire a probationary employee because the Deputy Commissioner of Citywide Personnel Services never approved petitioner’s termination. Under ACS’s rules, this Commissioner must approve of the termination of a probationary employee if ACS seeks to terminate the employee less than two months after the employment commenced (verified petition, exhibit H). “If termination is desired prior to the minimum probationary period ... it must be shown to the satisfaction of the Deputy Commissioner for Citywide Personnel Services that the services of the probationer are unsatisfactory and the Deputy Commissioner for Citywide Personnel Services must approve such termination” (id.).
Respondents claim that this procedure, which specifically applies to probationary employees on the job for less than two months, does not create new rights. Respondents insist that even if this termination procedure created some right, petitioner would only be entitled to back pay for 16 days because the termination would have been effective two months after petitioner’s start date. Respondents contend that the failure to follow this procedure does not invalidate the termination.
“An agency’s failure to follow its own procedures or rules in rendering a decision is arbitrary and capricious” (Matter of D.F. v Carrion, 43 Misc 3d 746, 756 [Sup Ct, NY County 2014], citing Matter of Gilman v New York State Div. of Hous. & Community Renewal, 99 NY2d 144 [2002]). Here, respondents allegedly did not follow the clearly-stated procedure for terminating a probationary employee on the job for less than two months. Respondents’ reliance on the notion that the procedure did not create new rights or that a probationary employee can be fired at any time is misplaced. The rules in question simply provide a procedure to fire a probationary employee in the first two months of employment—it does not change the fact that the probationary employee can be fired at any time *543 during the probationary period (see verified petition, exhibit H).
For some reason, respondents created a special set of rules to fire probationary employees with less than two months of employment. Respondents cannot choose to ignore their own rules for termination when it might be convenient. Although the remedy for these allegations (if proved accurate) may be, as respondents maintain, simply back pay until the termination would have been permissible, petitioner has still stated a cause of action.
Summary
This case highlights the inherent conflict between employment protections in the human rights laws (see Executive Law § 296 [16] [State Human Rights Law]; Administrative Code of City of NY § 8-107 [11] [New York City Human Rights Law]) and First Department case law. These provisions of the Human Rights Laws (both the State and City versions) reflect a legislative directive that employers refrain from taking adverse actions against employees based upon an employee’s arrest record (especially where the criminal charges are resolved in that employee’s favor). However, the First Department has stated on numerous occasions that an arrest, even if the charges are later dropped, is an appropriate ground to fire a probationary employee.
It is unclear how these Human Rights Law provisions can effectively fulfill their intended purpose if government employers can fire a probationary employee based solely on criminal charges that are later dropped. In this case, if petitioner applies for another government job, the prospective employer would be prohibited from asking about her arrest record. This makes no sense—if dismissed criminal charges are not supposed to hinder a job applicant, then why should they be the sole basis of termination from employment? Clearly, as alleged here, petitioner’s arrest record was held against her.
Respondents essentially argue that people may be innocent until proved guilty in criminal court but not in the real world of working people. Respondents argue that it is perfectly fair that the collateral consequence of a simple arrest is not only employment termination, but it is also fair to refuse to consider rehiring after charges are quickly dropped without conditions. This court disagrees: to be fair, ACS could have conducted its *544 own investigation with respect to its standard of conduct[3] and should have reconsidered the termination after the conclusion of the criminal case, which was within a month after the firing.
Respondents’ cross motion to dismiss is denied and respondents are directed to answer the petition in accordance with the CPLR.

. The court recognizes that the dismissal of criminal charges does not necessarily mean that there was no basis to deny petitioner’s request for reinstatement. But there is no evidence in the record before this court that respondents did their own investigation into the incident—respondents appear to have simply relied upon the mere fact that petitioner was arrested and ignored her subsequent request for reinstatement. Interestingly, respondents could not have asked petitioner about this arrest if it had occurred a few months earlier and prior to petitioner’s application for the position with ACS (see Executive Law § 296 [16] [State Human Rights Law]). Why should petitioner be fired and her reinstatement refused based upon an incident that very same employer could not ask about as part of the hiring process?

. Of course, it would be easier if respondents had conducted their own investigation or had simply waited for the resolution of the criminal charges.

. To be clear, the situation the court is contemplating involves circumstances like the one here, where the agency has apparently not done its own investigation into an incident. Because a probationary employee may be fired for virtually any reason, as long as it’s not in bad faith or unlawful, the employer need not prove that the probationary employee committed a crime beyond a reasonable doubt in order to effectuate termination. Acts can still be reprehensible and justify termination even if they do not constitute a crime.